# In the United States Court of Federal Claims

No. 18-1115
Filed: August 29, 2022
NOT FOR PUBLICATION

---

**WILLIAM KING, et al.,**

                    *Plaintiffs,*

**v.**

**UNITED STATES,**

                    *Defendant.*

---

## MEMORANDUM OPINION AND ORDER

In this fifth-amendment takings case, the plaintiffs William King, Anthony Gugliuzza, and Stephen Dardzinski move for class certification, for the appointment of the three named plaintiffs as class representatives, and for the appointment of Messing & Spector LLP and Schneider Wallace Cottrell Konecky LLP as class counsel. The defendant does not oppose the plaintiffs' motion. The plaintiffs have demonstrated that they meet the requirements of Rule 23 of the Rules of the Court of Federal Claims ("RCFC") for class certification and the appointment of representatives and counsel. Accordingly, the plaintiffs' motion is granted.

## I.    BACKGROUND

The opinion on the defendant's motion for summary judgment, *King v. United States*, 159 Fed. Cl. 450 (2022), sets forth the relevant facts of this case, which are only briefly summarized here. In 2014, Congress passed the Multiemployer Pension Reform Act ("MPRA"), which authorized pension plans in "critical and declining status" to apply to the Secretary of the Treasury ("Treasury") to reduce the vested benefits of plan participants and beneficiaries. *See* 29 U.S.C. § 1085(e)(9)(A). Treasury, in consultation with the Pension Benefit Guaranty Corporation ("PBGC") and the Department of Labor ("Labor"), had to review a pension plan's application under the MPRA and, if the application satisfied certain criteria, administer an election in which plan participants would vote on the proposed reductions. *Id.* §§ 1085(e)(9)(G), (H). If the proposed reductions met the criteria under the MPRA, Treasury would issue final authorization for the reduction of benefits, which the pension plan could implement through an amendment of its plan documents. *Id.* §§ 1085(a)(3)(b), 1085(e)(9)(H)(vi).

The plaintiffs in this case are vested participants of the New York State Teamsters Conference Pension and Retirement Fund (the "Teamsters Fund"). The Teamsters Fund applied to reduce the benefits of many vested plan participants and beneficiaries under the MPRA. Its application was approved and, after a vote was held, Treasury authorized the Fund to suspend certain pension benefits. The reduction took effect on October 1, 2017. Since then, the named

plaintiffs contend that they have suffered a 29-percent reduction in their monthly pension benefits.

Under the American Rescue Plan Act of 2021 ("ARPA"), pension plans that reduced their benefits under the MPRA may apply to PBGC for special financial assistance to restore participants' benefits and improve the plans' financial stability. *See* 29 U.S.C. § 1432(a)(1). After withdrawing its initial application, the Teamsters Fund submitted a revised application on July 21, 2022. (Def.'s Resp. Br., ECF 156 at 5.)  Under the time limits prescribed by the ARPA, a decision on this application is expected no later than November 18, 2022. (*Id.*)

After the reduction to their pension benefits took effect, the plaintiffs sued for a taking, alleging that the federal government, in approving the reduction, effected a taking in violation of the fifth amendment to the Constitution. After Judge Firestone declined to dismiss the suit, the parties engaged in limited discovery. The defendant then moved for summary judgment. After several delays related to the enactment of the ARPA, the defendant's motion for summary judgment was granted in part and denied in part. *King,* 159 Fed. Cl. 450.

The plaintiffs moved to certify the class on June 24, 2022. (ECF 154.) The defendant filed a response brief on August 9, 2022. (ECF 156.) The Court held a status conference on August 24, 2022, to address the motion.

## II.   DISCUSSION

The plaintiffs move to certify a class, with the three named plaintiffs as class representatives. The plaintiffs propose the following class definition:

> Any person (whether a participant, beneficiary, or other individual) who received one or more pension payments from the New York State Teamsters Conference Pension and Retirement Fund (the "Fund") on or after October 1, 2017 unless either (1) that person was an "Active Participant" as of October 1, 2017 or (2) all pension payments that were received by that person since October 1, 2017 were reduced by 0% relative to the sum the recipient would have been entitled to receive if the Defendant had not authorized the Fund, in or around September 2017, to reduce certain pension benefits under the Kline-Miller Multiemployer Pension Reform Act of 2014.[1]

(ECF 154 at 1.)  Additionally, the plaintiffs move for the appointment of Messing & Spector LLP and Schneider Wallace Cottrell Konecky LLP as class counsel for the certified class.

---

[1] "Active Participant" is defined under the terms of the plan documents as "a Participant on whose behalf a Contributing Employer is required to make contributions to the Plan." (*See* ECF 154 at 1 n.1.)  The proposed class includes both participants and beneficiaries.

The defendant does not oppose class certification, the appointment of the named plaintiffs as class representatives, or the appointment of the proposed class counsel.  In its response brief, however, the defendant raises two concerns: (1) that beginning the opt-in process may confuse potential class members because of the pending ARPA application, and (2) that class members who voted to approve the benefit reductions under the MPRA or who did not vote should not be eligible to recover if the Court ultimately holds that a taking occurred.  (*See* ECF 156.)

The Court first addresses the timeliness of the plaintiffs' motion for class certification before analyzing the substance of that motion.  After certifying the class, the Court appoints class counsel and directs the parties to define subclasses.

### A.     Timeliness

The court lacks jurisdiction over a claim "unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501.  Some judges of this court have held that the filing of a class-action complaint tolls the statute of limitations.  *See Bell v. United States*, 123 Fed. Cl. 390, 400 n.6 (2015); *Abernethy v. United States*, 108 Fed. Cl. 183, 187 (2012).  The Federal Circuit has held that a plaintiff's motion to certify a class tolls the running of the six-year statute of limitations for prospective class members, and that the limitations period remains tolled during the opt-in period.  *Bright v. United States*, 603 F.3d 1273, 1274 (Fed. Cir. 2010).

The plaintiffs' motion is timely.  The taking allegedly occurred in October 2017, so the six-year statute of limitations does not run until October 2023.  (*See* Am. Compl., ECF 98 at ¶ 58.)  If the plaintiffs' filing of the complaint did not toll the statute of limitations, then their filing of the motion for class certification did toll the statute of limitations.  *See Bright*, 603 F.3d at 1274.  Importantly, if the class is certified, the statute of limitations would remain tolled while prospective class members are permitted to opt into the class.  *See id.*  The parties could therefore avoid confusion among potential class members by waiting until the Teamsters Fund's ARPA application is resolved before distributing the notice.

### B.     Class Certification

Notwithstanding the defendant's lack of opposition to the plaintiffs' motion for class certification, the Court must independently verify that the plaintiffs meet the requirements of RCFC 23.  *See Gen. Tel. Co. Southwest v. Falcon*, 457 U.S. 147, 161 (1982) (holding that a class action may be certified only if the trial court determines "after a rigorous analysis" that the prerequisites are satisfied).  RCFC 23(a) provides that representatives of a class may sue only if:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Additionally, pursuant to RCFC 23(b), a class action may be maintained only if:

the United States has acted or refused to act on grounds generally applicable to the class; and . . . the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

The plaintiffs bear the burden of establishing that the proposed class action meets the requirements of RCFC 23. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). All elements of RCFC 23 must be satisfied for the court to certify the class. *Barnes v. United States*, 68 Fed. Cl. 492, 494 (2005). Judges of this court have generally distilled the requirements for class certification into five categories: (1) numerosity, (2) commonality, (3) typicality, (4) adequacy, and (5) superiority. *See, e.g.*, *Common Ground Healthcare Coop. v. United States*, 137 Fed. Cl. 630, 637 (2018).

## 1. Numerosity

RCFC 23(a)(1) provides that the proposed class must be "so numerous that joinder of all members is impracticable."

The proposed class in this case comprises 10,936 eligible individuals who experienced a reduction in their pension benefits and were not "active participants" in the Teamsters Fund. (*See* ECF 154 at 3.) Joinder of more than 10,000 parties would be highly impracticable. Other classes with far fewer eligible members have been certified. *See, e.g.*, *King v. United States*, 84 Fed. Cl. 120, 124-25 (2008) (certifying a class of 152 members); *Haggart v. United States*, 89 Fed. Cl. 523, 531 (2009) (certifying a class of 750 potential plaintiffs). Accordingly, the plaintiffs satisfy this first factor.

## 2. Commonality

The second factor, commonality, comprises three criteria: (1) there must be "questions of law or fact common to the class;" (2) the United States must have "acted or refused to act on grounds generally applicable to the class; and" (3) the common questions must "predominate over any questions affecting only individual members." RCFC 23(a)(2); RCFC 23(b)(2)-(3).

First, the plaintiffs distill the legal issue common to all class members into a single question: "Did the Government engage in a taking of property by authorizing the Teamsters Fund to reduce vested pensions in violation of the binding contract that protected each Class Member's interests?" (ECF 154 at 4.) Accordingly, there is a legal question common to all class members' claims. *See* RCFC 23(a)(2).

4

Second, the United States acted on grounds generally applicable to the class: Congress passed the MPRA, and Treasury, in conjunction with PBGC and Labor, approved the Teamsters Fund's application to reduce vested plan participants' benefits pursuant to the MPRA. *See* 29 U.S.C. § 1085(e)(9).

Third, the legal question common to all class members' claims must predominate over questions affecting individual class members' claims. RCFC 23(b)(3). "'[F]actual variation among the class grievances' is acceptable as long as 'a common nucleus of operative fact' exists." *Curry v. United States*, 81 Fed. Cl. 328, 334 (2008) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1017-18 (7th Cir. 1992)). The question posed by the plaintiffs, whether the government's authorization of the reduction to the plaintiffs' benefits under the MPRA constituted a taking, is at the heart of this case. The government's actions towards the plaintiffs and the subsequent reduction in their benefits form a "common nucleus of operative fact." *See id.* Those legal issues predominate over other factual variations, such as differences in the way the prospective class members voted and differing levels of reductions in benefits. Accordingly, this second factor, commonality, is satisfied.

### 3.    Typicality

RCFC 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." "[T]ypicality may be satisfied even if some factual differences exist between the claims of the named representatives and the claims of the class, provided that the named representatives' claims share the same essential characteristics as the claims of the class at large." *Fisher v. United States*, 69 Fed. Cl. 193, 200 (2006).

The plaintiffs argue that the three named plaintiffs' claims are "functionally indistinguishable" from all other class members' claims: all potential members of the proposed class suffered a reduction of their pension benefits following government approval of that reduction. (ECF 154.) The claims of the three putative class representatives share the same "essential characteristics" of identical government action and a reduction in pension benefits. *See Fisher*, 69 Fed. Cl. at 200. Accordingly, the representative plaintiffs' claims are typical of the other class members' claims.

### 4.    Adequacy

Under RCFC 23(a)(4), the representative parties must "fairly and adequately protect the interests of the class." Under this factor, courts must assess whether the class members may have interests "'antagonistic' to one another," whether counsel is generally qualified, and whether counsel may have conflicts of interest. *See Barnes v. United States*, 68 Fed. Cl. 492, 499 (2005) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997)).

Certification of this class presents no issues of adequate representation. The class members have no apparent antagonistic interests towards each other, counsel is highly qualified, and there are no conflicts of interest evident to the Court. *See Horvath v. United States*, 149 Fed. Cl. 735, 750-51 (2020); *Barnes*, 68 Fed. Cl. at 499. The representative parties adequately and fairly represent the interests of the class.

### 5.      Superiority

Finally, a class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy." RCFC 23(b)(3). Factors for evaluating superiority include (1) whether class members have an interest in individually controlling separate actions, (2) whether class members have already begun other litigation, and (3) whether there are likely difficulties in managing the class action. *See id.*

First, in this case, class members likely do not have an interest in individually controlling separate actions. Most of the potential class members are elderly, retired individuals, and litigation of the complex legal issues in this case on an individual basis would require substantial financial resources with no likely additional benefit. Moreover, the class members are in similar legal positions relative to one another, and separate actions are unlikely to yield different results.

Second, although the Teamsters Fund is in the process of securing economic relief under the ARPA, the Court is not aware of any other litigation of the class members regarding cuts to their pension benefits.

Third, the parties do not point to any difficulties regarding management of this class action, and the Court does not foresee any particular to this case. A class action is therefore superior to other methods for fairly and efficiently adjudicating the plaintiffs' claims.

In sum, all five requirements for class certification are met: (1) the class is sufficiently numerous, (2) there is a common legal question regarding government action predominating the plaintiffs' claims, (3) the representative parties' claims are typical of their class, (4) the representative parties will adequately represent the class, and (5) a class action is superior to other methods of adjudication of this case. Accordingly, class certification is appropriate, and the three named plaintiffs are appropriate representatives of the class.

### C.      Appointment of Class Counsel

Pursuant to RCFC 23(g)(1)(A), in appointing class counsel, the court must consider (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class."

The plaintiffs request the appointment of Messing & Spector LLP and Schneider Wallace Cottrell Konecky LLP as class counsel for the certified class. Noah Messing, Phillip Spector, and Jason Kim have already done exceptional work identifying and investigating potential claims in this action. They are also experienced in complex litigation, having expertise in all subject matters relevant to this case, including pension law and ERISA, class actions, and pre-trial and appellate advocacy. (*See* Decl. of Noah A. Messing, ECF 154-2; Decl. of Jason H. Kim, ECF 154-3.) Counsel for the plaintiffs have already produced high-quality work in the case, and the Court does not doubt that counsel will continue to commit significant resources to representation

of the class in the future.  Accordingly, Messing & Spector LLP and Schneider Wallace Cottrell Konecky LLP are approved as class counsel.

### D.    Subclasses

Although it does not oppose class certification, in its reply brief, the defendant raises a separate legal question affecting a subset of potential class members.  (ECF 156 at 3-6.)  In the election administered by the government, some plan participants voted to accept the MPRA reductions, other participants voted to reject them, and many participants did not vote at all.  *See King*, 159 Fed. Cl. at 459.  The defendant indicates that it may argue that the plan participants who voted to approve the reduction of benefits and the participants who did not vote at all should be excluded from the class and should not obtain relief, if the Court holds that a taking occurred. (ECF 156 at 3-6.)

Without prejudice to the merits of the defendant's potential argument, the Court finds it administratively expedient to categorize the class members during the opt-in period into subclasses.  Accordingly, as the Court explained on the record during the status conference on August 24, 2022, the parties are directed to propose definitions for three subclasses: one comprising class members who voted to reject the benefit reductions, a second comprising class members who did not vote, and a third comprising class members who voted to approve the benefit reductions.

## III.   ORDER

The plaintiffs' motion for class certification (ECF 154) is **GRANTED**.  The Court **CERTIFIES** the following class pursuant to RCFC 23:

> Any person (whether a participant, beneficiary, or other individual) who received one or more pension payments from the New York State Teamsters Conference Pension and Retirement Fund (the "Fund") on or after October 1, 2017 unless either (1) that person was an "Active Participant" as of October 1, 2017 or (2) all pension payments that were received by that person since October 1, 2017 were reduced by 0% relative to the sum the recipient would have been entitled to receive if the Defendant had not authorized the Fund, in or around September 2017, to reduce certain pension benefits under the Kline-Miller Multiemployer Pension Reform Act of 2014.

The Court **DESIGNATES** William King, Anthony Gugliuzza, and Stephen Dardzinski as representatives of the class.  *See* RCFC 23(a).

The Court **APPOINTS** Messing & Spector LLP and Schneider Wallace Cottrell Konecky LLP as class counsel.  *See* RCFC 23(g).

The parties shall meet and confer for purposes of proposing definitions for the three proposed subclasses.  The plaintiffs shall file a motion proposing subclasses no later than

**September 23, 2022**.  The plaintiffs shall indicate in their motion whether the defendant consents to the proposed definitions.  If the defendant does not consent, the defendant shall file a response to the plaintiffs' motion no later than **October 7, 2022**.  The plaintiffs shall file any reply no later than **October 14, 2022.**

Additionally, no later than **October 21, 2022**, the plaintiffs shall file a motion seeking the Court's approval of a proposed notice to prospective class members complying with RCFC 23(c)(2)(B).  The plaintiffs shall include in their filing the proposed notice, the proposed opt-in notice form, and the proposed plan for the distribution of notice and the opt-in period, including the date by which potential members must opt in and the specific method by which the notice will be provided.  The plaintiffs shall also indicate whether the defendant consents to plaintiffs' motion.  If the defendant does not consent to the plaintiffs' motion, the defendant shall file a response no later than **November 15, 2022**.  The plaintiffs shall file any reply no later than **November 25, 2022**.  To the extent the Court grants the plaintiffs' motion, the plaintiffs shall plan to delay distribution of the notice until after resolution of the Fund's pending ARPA application and shall allow sufficient time thereafter for class members to opt into the case.

Following the parties' submissions, the Court will convene the parties for a status conference to establish a schedule for further merits briefing.

It is so **ORDERED**.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**